# In the United States Court of Federal Claims

No. 11-595C
(Originally Filed: June 18, 2014)[1]
(Reissued: July 14, 2014)

FILED
JUL 15 2014
U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| LOUIS A. ARROYO III, )<br>      )<br>            Plaintiff, )<br>      )<br>v. )<br>      )<br>THE UNITED STATES OF AMERICA, )<br>      )<br>            Defendant. )<br>      )<br>      )<br>      ) | Military Pay Act, 37 U.S.C. § 204;<br>Judicial Review of Military Decisions;<br>DoDI 1241.2; Extended Active Duty;<br>DoDI 6485.01; Human Immunodeficiency<br>Virus (HIV); Disability Evaluation<br>System (DES); Constructive Service<br>Doctrine; Unauthorized Acts by<br>Government Agents |

*Louis A. Arroyo, III*, Fort Walton, FL, Plaintiff, *pro se*.

*Sarah M. Valenti*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**KAPLAN, Judge:**

Plaintiff Sergeant Arroyo, a member of the Air Force Reserve, has filed this lawsuit pro se, claiming that the Air Force improperly allowed his active duty orders to expire when, according to Sergeant Arroyo, he was entitled under applicable regulations to remain on active duty for disability processing. He seeks restoration to active duty for disability processing, back pay, an admonishment of the Air Force Reserve Command for delaying and mismanaging his disability processing, and "such other relief as the Court deems just and proper." Compl. (Prayer

---

[1] This opinion was originally filed under seal. The Court allowed the parties until July 2, 2014 to submit proposed redactions, but they submitted none. The Court now reissues the full opinion, unsealed.

for Relief). Pending before the Court are the parties' cross motions for judgment on the administrative record.[2]

The government's motion for judgment on the administrative record is **GRANTED**, for the reasons set forth in greater detail below.

## BACKGROUND

Plaintiff Sergeant Arroyo served in the United States Air Force ("Air Force") from August 1975 to June 1985 and has been a member of the Air Force Reserve since December 12, 2002. Compl. ¶ 2. On May 24, 2006, the Air Force placed Sergeant Arroyo on active duty to serve in support of Operation Iraqi Freedom as a firearms instructor attached to the 96th Security Forces Squadron out of Eglin Air Force Base, Florida. Def.'s Mot. to Dismiss or for J. on Admin. R. 4, ECF No. 46 [hereinafter "Def.'s Mot."].

### I. Sergeant Arroyo's Health Conditions

During a routine health screening on July 14, 2009, Sergeant Arroyo tested positive for Human Immunodeficiency Virus ("HIV"). Admin. R. ("AR") 757. He was determined fit for duty, but, as dictated by Department of Defense ("DoD") and Air Force policy on HIV, he was subject to duty restrictions. Particularly relevant to this case, HIV positive members are ineligible for extended active duty—that is, duty for a period of more than thirty days. Dep't of Def. Instruction ("DoDI") 6485.01 ¶ 6.2.5 and Air Force Instruction ("AFI") 48-135 ¶¶ 3.8, A10.1.2 [hereinafter "HIV regulation"].[3] In spite of this regulatory restriction, his unit continued to authorize orders of more than thirty days, in attempts to avoid adding the stress of unemployment to the stress of his diagnosis.[4] See AR 781-838.

---

[2] Per the Court's July 19, 2013 order, three of Sergeant Arroyo's filings (ECF Nos. 9, 32, and 38) are treated collectively as a motion for summary judgment, or in the alternative, for judgment on the administrative record. As stated below, the Court treats both this motion and the government's motion to dismiss or, in the alternative, for judgment on the administrative record as cross motions for judgment on the administrative record only.

[3] When asked at oral argument, the government could not explain the basis for this DoD regulation that singles out reservists who test positive for HIV and prohibits them from serving on "active duty for a period of more than 30 days." See Tr. 4-7, ECF No. 54. This restriction apparently does not apply to any other chronic conditions. Unfortunately for Sergeant Arroyo, however, the existence of this restriction proves fatal to his claimed entitlement to be kept on active duty orders pending completion of disability processing, for the reasons set forth below.

[4] After his HIV diagnosis, Sergeant Arroyo's unit encountered difficulty in getting approval for orders exceeding thirty days. See AR 306. Sergeant Arroyo's squadron commander, therefore, planned to arrange "multiple blocks of 30 day orders." AR 517. On March 18, 2010, orders spanning from April 1 to April 30, 2010 were approved. AR 164. Meanwhile, however, Sergeant Arroyo's unit had failed to terminate a set of earlier orders, which were supposed to expire in February 2010. See AR 228. In response to concerns that Military Personnel Appropriations should not have funded Sergeant Arroyo's overstayed orders, on May 3, 2010, Sergeant Arroyo's Wing Commander authorized his placement on Reserve Personnel

2

As a result of this stress, Sergeant Arroyo developed depression, anxiety, and insomnia. AR 912-13 (showing medical records describing depression and anxiety as secondary to HIV diagnosis "and associated psychosocial stressors (changes in job functioning, MEB, relational difficulties)"). He also complained of back pain and arthritis pain in his hands. He was diagnosed with osteoarthritis on April 23, 2010. AR 983. His rheumatologist noted that Sergeant Arroyo exhibited "prominent Herberden node deformities of bilateral hands" and that "imaging profile of the hands confirm advanced erosive OA [osteoarthritis]." AR 982. With respect to Sergeant Arroyo's back, the rheumatologist noted "age appropriate mild degenerative change in the cervical and thoracic spinal region." AR 981. The rheumatologist further noted that "[a] great number of his problems are related to unspecified myalgia-arthralgia. I question whether these may relate to deconditioning, stress related magnification of symptoms and/or related to chronic viral issues and polydrug therapy." Id.

## II. Sergeant Arroyo's Disability Processing

On June 1, 2010, Sergeant Arroyo's primary care manager, Lt. Col. Patrick Danaher, recommended initiation of the Disability Evaluation System ("DES") process—that is, the formal set of procedures for determining whether a member of the military is fit for duty or should be separated or retired with disability benefits—for the diagnosis of erosive osteoarthritis. AR 221. DES processing consists of a Medical Evaluation Board ("MEB"), which confirms the member's diagnosis and sets duty limitations, and a Physical Evaluation Board ("PEB"), which assigns the member a disability rating and assesses the member's entitlement to benefits upon his separation or retirement. DoDI 1332.38 E3.P1.2.1, E3.P1.3.1.

A sick or injured member is entitled to DES processing only if he or she incurred the illness or injury in the line of duty ("ILOD"). 10 U.S.C. § 1206 (2012); DoDI 1332.38 E3.P2.5. Thus, Master Sergeant Joe Lofria of Sergeant Arroyo's unit told Dr. Danaher that "[w]e will need to wait until there is a final determination on the LOD . . . before we can move forward with a new MEB." AR 221. On June 10, Sergeant Arroyo requested and submitted the paperwork required for the LOD. AR 935. The LOD determination process did not begin until July 10, 2010. See AR 942.

Sergeant Arroyo's case progressed rather slowly through the several layers of review in the line-of-duty determination process. Although the officer appointed to investigate Sergeant Arroyo's case recommended a finding of ILOD, on April 25, 2011, the "Approving Authority" overruled that finding and issued a final determination that Sergeant Arroyo's osteoarthritis existed prior to service ("EPTS"). See AR 945-48. On May 6, 2011, Sergeant Arroyo requested a reinvestigation of the final LOD determination, but his commander denied the request. AR 1013-15. Later, Sergeant Arroyo's LOD determination was reviewed by the Air Reserve Command Headquarters ("HQ ARC"), pursuant to AFI 36-2910 ¶ 3.13. On January 19, 2012,

---

Appropriations-funded orders, retroactive to February 23, 2010. Id. Therefore, although Sergeant Arroyo was serving on orders of thirty days in April 2010, the record also reflects that he was serving on orders of thirty-one days or more between February and May 2010.

HQ ARC rendered an administrative determination that Sergeant Arroyo's osteoarthritis was ILOD. Def.'s Reply Ex. A, ECF No. 12. Thus, approximately a year and a half after the LOD process began, he was referred to the MEB for initiation of DES processing. See id.

### III. Sergeant Arroyo's Release from Active Duty and His Ensuing Lawsuit

In the meantime, during the pendency of his LOD determination, Sergeant Arroyo's active duty orders expired on February 27, 2011. Compl. ¶¶ 6, 21; AR 2-3. Believing that DoDI 1241.2 ¶ 6.6.3.2 entitled him to remain on active duty until he received full DES processing, Sergeant Arroyo lodged a complaint with his command and submitted a congressional complaint to his senator and congressman. Compl. ¶¶ 14-15. When these avenues proved unavailing, Sergeant Arroyo filed the present suit in this Court on September 16, 2011. In his complaint, he asserted a claim under the Military Pay Act, 37 U.S.C. § 204 (2006), alleging that his orders should not have been allowed to expire in February 2011 and asking the Court to order his restoration to active duty and to award him back pay in the amount he would have received if he had remained on active duty, among other forms of relief.[5] In February 2012, after HQ ARC rendered its ILOD finding, the Air Force notified Sergeant Arroyo that it was willing to evaluate his medical conditions through the DES. See Def.'s Mot. to Dismiss, in Part, and Mot. for Remand 4-5, ECF No. 8 [hereinafter "Def.'s Mot. to Dismiss & Remand"]. According to the government, however, Sergeant Arroyo refused to cooperate because he insisted that he must be reinstated to active duty to undergo DES processing. Def.'s Mot. 40.

On February 10, 2012, the government filed a motion to dismiss, in part, Sergeant Arroyo's suit and a motion to remand the case to the Air Force Board for the Correction of Military Records ("AFBCMR"). The government requested that the Court dismiss Sergeant Arroyo's complaint as moot because the Air Force had, by this time, already determined that he was entitled to DES processing and was prepared to initiate an MEB. Def.'s Mot to Dismiss & Remand 4. The government also requested that the Court remand Sergeant Arroyo's case to the AFBCMR to "enable the Air Force to create a cohesive and coherent record regarding all aspects of [Sergeant] Arroyo's claims," "to consider all of [Sergeant] Arroyo's claims in a comprehensive manner," and "to fully develop his claims and to present evidence as part of the record to be considered by the Secretary of the Air Force through the AFBCMR." Id. at 6.

On July 19, 2013, the Court denied the government's motion to remand and denied without prejudice the government's partial motion to dismiss. Order, July 19, 2013, ECF. No. 43. "Concerning the motion to remand, the Court [did] not think that it [was] appropriate to remand this matter over the plaintiff's objection. Review of a matter by a military correction board is an option, not a requirement . . . ." Id. at 1 (citing Martinez v. United States, 333 F.3d 1295, 1301, 1304 (Fed. Cir. 2003) (en banc)). Moreover, "[c]oncerning the government's partial motion to dismiss," the court found "that for this particular matter, issues bearing on the appropriate remedies available to plaintiff cannot be determined prior to (or separate from) a resolution of the question of liability. . . . [T]he government is free to revisit the issue in its motion for judgment on the administrative record." Order at 2. The Court also noted that it

---

[5] The case was initially assigned to Judge Wolski. On November 25, 2013, the case was transferred to the undersigned.

4

would treat three previous filings by Sergeant Arroyo collectively as a motion for summary judgment or, in the alternative, for judgment on the administrative record. Id.

On August 2, 2013, the government filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC") and a Cross Motion for Judgment upon the Administrative Record pursuant to RCFC 52.1.[6] On May 20, 2014, oral argument was held. The case is now ripe for decision.

## DISCUSSION

### I. Jurisdiction

Jurisdiction over Sergeant Arroyo's claim arises from the Tucker Act, 28 U.S.C. § 1491(a)(1) (2012) and the Military Pay Act, 37 U.S.C. § 204. See Antonellis v. United States, 723 F.3d 1328, 1331 (Fed. Cir. 2013). The Tucker Act confers jurisdiction on this court and waives sovereign immunity, see Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir. 2007); the Military Pay Act constitutes the requisite money-mandating authority, see Dysart v. United States, 369 F.3d 1303, 1315 (Fed. Cir. 2004). Specifically, the Military Pay Act entitles a military member who was wrongfully separated from service to the pay that he would have received but for the unlawful action. Roth v. United States, 378 F.3d 1371, 1384 (Fed. Cir. 2004). In addition, as explained by the Federal Circuit,

> although the Court of Federal Claims does not possess general equity jurisdiction, under the Tucker Act, in actions for monetary relief, '[t]o provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records . . . .

Id. (quoting 28 U.S.C. § 1491(a)(2)).

---

[6] Because, in reaching a decision in this matter, the Court considers materials outside the pleadings, pursuant to RCFC 12(d), the Court treats the government's motion under RCFC 12(b)(6) as part of its cross motion for judgment on the administrative record under RCFC 52.1. See RCFC 52.1 rules committee note (2006) ("This rule applies whether the court's decision is derived in whole or in part from the agency action reflected in the administrative record."). Although RCFC 12(d) requires the Court to treat an RCFC 12(b)(6) motion as one for summary judgment, this Court in Peterson v. United States, 104 Fed. Cl. 196, 203-04 (2012) recognized that, where a case turns on action taken by an administrative agency, "treatment of defendant's motion for . . . dismissal as one for judgment upon the administrative record pursuant to RCFC 52.1, as opposed to summary judgment, is appropriate."

Moreover, because the Court disposes of the case by granting judgment for the government on the administrative record, in denying Sergeant Arroyo's motion for summary judgment, this opinion also omits discussion of summary judgment standards.

## II. Standard of Review

RCFC 52.1, which governs motions for judgment on the administrative record, "provide[s] for trial on a paper record, allowing fact-finding by the trial court." Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005).[7] Therefore, the standard of review for a motion for judgment on the administrative record differs from that for a motion for summary judgment. Id. at 1354-55. Unlike summary judgment, for instance, "a genuine dispute of material fact does not preclude a judgment on the administrative record." Sierra Nevada Corp. v. United States, 107 Fed. Cl. 735, 751 (2012). To the contrary, "[t]o review a motion or cross-motions under RCFC 52.1(c), the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." Jordan Pond Co., LLC v. United States, 115 Fed. Cl. 623, 630 (2014). In the context of a military pay case, the plaintiff's burden is to show, by "cogent and clearly convincing evidence," Prochazka v. United States, 90 Fed. Cl. 481, 491 (2009), that the agency's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006) (quoting Porter v. United States, 163 F.3d 1304, 1312 (Fed. Cir. 1998).

Judicial review of military activities is limited. See Murphy v. United States, 993 F.2d 871, 872-73 (Fed. Cir. 1993). In general, the Court reviews the merits of a military decision under the deferential standard of the Administrative Procedure Act, 5 U.S.C. § 706 (2012), which assesses whether the decision was "arbitrary, capricious, unsupported by substantial evidence, or otherwise not in accordance with law." See Walls v. United States, 582 F.3d 1358, 1367 (Fed. Cir. 2009); Pearl v. United States, 111 Fed. Cl. 301, 303 n.1 (2013). While this limited review gives the military broad discretion, the military "is nevertheless bound to follow its own procedural regulations." Murphy, 993 F.2d at 873. The Court "determines whether the procedures were followed by applying the facts to the statutory or regulatory standard." Id.

## III. Substantive Law

The cross motions under the Court's consideration here raise issues related to two DoD regulations. The first is the HIV regulation, which provides, in relevant part, that "[e]ligibility for extended AD (duty for a period of more than 30 days) shall be denied to those RC members with serologic evidence of HIV infection (except under conditions of mobilization and on the decision of the Secretary of the Military Department concerned)."[8] DoDI 6485.01 ¶ 6.2.5.

The second is DoDI 1241.2 ¶ 6.6.3.2, which, for purposes of this Opinion, the Court refers to as the "continued active duty rule." It states:

---

[7] RCFC 52.1 "replaces an earlier rule, RCFC 56.1." RCFC 52.1 rules committee note. Bannum, 404 F.3d at 1354-56, refers to RCFC 56.1, but its analysis of the rule applies equally to RCFC 52.1.

[8] As with respect to the continued active duty rule, the Air Force has codified the DoD's HIV regulation within its own regulations at AFI 48-135 ¶¶ 3.8, A10.1.2. Specifically, ¶ A10.1.2 provides, in relevant part, that "ARC members with laboratory evidence of HIV infection are ineligible for extended active duty for a period of more than 30 days."

6

> A Reserve component member on active duty under a call or order to active duty specifying a period of 31 days or more, who incurs or aggravates an injury, illness, or disease in the line of duty shall, with the member's consent, be continued on active duty upon the expiration of call or order to active duty until the member is determined fit for duty or the member is separated or retired as a result of a Disability Evaluation System determination.[9]

Thus, the rule appears to set as prerequisites for continued active duty for DES processing that a reservist be on active duty orders of thirty-one days or more and that he incurred the illness or injury ILOD.

When a reservist is released from active duty wrongfully—whether in violation of the continued active duty rule or otherwise—he can recover active duty pay for the period in which he was entitled to remain on active duty under the "constructive service doctrine." See Barnick v. United States, 591 F.3d 1372, 1379 (Fed. Cir. 2010). "In general, a reservist is entitled to active duty pay only for the period that he is actually on active duty." Id. The constructive service doctrine, however, "was designed to permit the award of back pay to a service person who had been injured by the improper termination of his service, and thereby denied the financial and other benefits he should and would have received but for the improper termination." Christian v. United States, 337 F.3d 1338, 1347 (Fed. Cir. 2003).

### IV. Application of Law

Sergeant Arroyo has premised his lawsuit on the continued active duty rule, claiming that he was entitled to remain on active duty upon the expiration of his orders in February 2011. According to Sergeant Arroyo, he met the rule's two prerequisites because, notwithstanding the HIV regulation's prohibition, his unit had in fact placed him on orders of thirty-one days or more, and, ultimately, his osteoarthritis was ILOD. Furthermore, although Sergeant Arroyo does not explicitly invoke the constructive service doctrine, he claims that the continued active duty rule entitled him to remain on active duty for DES processing of his osteoarthritis and asks the Court to award him back pay. Therefore, he essentially argues that the constructive service doctrine should apply in his case.

The government, on the other hand, argues that Sergeant Arroyo met neither prerequisite for continued active duty and is not entitled to constructive active duty pay. Regarding the

---

[9] See also Air Force Reserve Command Instruction (AFRCI) 36-3004 ¶ 4.1, which states the same rule but in slightly different language:

> Members on active duty . . . orders for a specified period of 31 days or more are not involuntarily released from their orders if they incur a line of duty medical condition. These members have their orders extended until the medical condition is resolved or can no longer be materially improved by further hospitalization or treatment, and the case has been processed and finalized through the disability evaluation system (DES), or the medical condition has been determined not to be in the line of duty.

prerequisite that he be on orders of thirty-one days or more,[10] the government argues that "Sergeant Arroyo was required to be on orders of 30 days or less" under the HIV regulation. Def.'s Mot. 35. Thus, the government argues, "[t]he Air Force should not be bound to grant him the rights of a service member diagnosed with a disability while on orders of 31 days or more merely because his unit disregarded instructions from both the Department of Defense and the Air Force." Id. In support of this argument, the government cites Urban Data Systems, Inc. v. United States, 699 F.2d 1147, 1153 (Fed. Cir. 1983), for the principle that "the United States is not bound by its agents acting beyond their authority and contrary to regulation." Def.'s Mot. 35.

The Court agrees with the government on this point, which is dispositive of Sergeant Arroyo's claims. Although the only orders documented in the administrative record specify a period of thirty-one days or more, the Court cannot give legal effect to such orders because they are "contrary to regulation"—in particular, the HIV regulation. Therefore, without valid orders of thirty-one days or more, Sergeant Arroyo did not meet the first prerequisite for application of the continued active duty rule, and he had no entitlement to continued active duty or active duty pay following the expiration of his orders. See Barnick, 591 F.3d at 1379-80 (holding that plaintiff was not entitled to constructive active duty pay for the period in which he underwent disability processing because he "was a reservist who had only been on temporary active duty assignments never longer than thirty days").[11]

Indeed, the predecessor court to the Federal Circuit similarly refused to give effect to an invalid term of active duty in Strahle v. United States, 602 F.2d 344, 347 (Ct. Cl. 1979).[12] In Strahle, the Army Office of Personnel Operations granted the plaintiff's request for an indefinite

---

[10] In addition to its argument that Sergeant Arroyo did not meet the prerequisite under the continued active duty rule that he be on orders of thirty-one days or more, the government also argues that Sergeant Arroyo did not meet the prerequisite that his condition was ILOD. "[R]eservists only qualify for Disability Evaluation System processing for conditions acquired in the line of duty," the government contends, "and the line of duty investigation of Sergeant Arroyo's osteoarthritis had not yet been completed at the time his orders expired." Def.'s Mot. 33. Because the Court finds that Sergeant Arroyo did not meet the first prerequisite, however, addressing the government's argument regarding the second prerequisite is unnecessary. Without orders of thirty-one days or more, Sergeant Arroyo was not entitled to remain on active duty under the continued active duty rule, and on that basis alone, judgment for the government is warranted.

[11] The Court notes, however, that under the reasoning in Barnick, Sergeant Arroyo would have been entitled to judgment but for the HIV regulation's prohibition on reservists who are HIV positive from serving on orders of thirty-one days or more. Barnick 591 F.3d at 1379 (distinguishing Barnick's case from those in which "the plaintiff was on extended active duty and able to continue on active duty when the improper action leading to his separation from the service occurred").

[12] Court of Claims decisions are binding on this Court unless overruled by the Federal Circuit. See S. Corp. v. United States, 690 F.2d 1368, 1370-71 (Fed. Cir. 1982).

term of active duty, even though terms for indefinite service were explicitly prohibited in a directive from the Assistant Deputy Chief of Staff for Personnel. Id.  When the plaintiff was released from active duty after only two years, he filed suit seeking, among other things, active duty pay from the date of his release from active duty until the date of judgment. Id. at 346. The Court of Claims, however, granted summary judgment for the government. Id. at 348. "As [approval of plaintiff's indefinite term] was unauthorized," the court held, "the Government is not bound by it and was free to substitute an active duty term with a specific expiration date." Id. at 347. Sergeant Arroyo's orders of thirty-one days or more were similarly unauthorized because they conflicted with the HIV regulation, and therefore, despite the continued active duty rule, the Air Force was free to allow his active duty orders to expire.

At oral argument, Sergeant Arroyo contended that the continued active duty rule was "superior authority" to the HIV regulation, and therefore, the HIV regulation should "not negate" or "supersede" the requirements of the continued active duty rule. Tr. 35. The Court, however, cannot create a hierarchy among DoD instructions, and, in any event, the continued active duty rule and the HIV regulation are not in conflict and can be applied without one "negating" or "superseding" the other. On the other hand, the HIV regulation's prohibition on active duty orders of thirty-one days or more and Sergeant Arroyo's actual orders of more than thirty-one days present mutually exclusive alternatives. Taking instruction from Strahle, 602 F.2d at 347, and related cases, the Court holds that the HIV regulation must control.

Although, as a result of this Opinion, Sergeant Arroyo cannot be restored to active duty or recover active duty pay, it is worth noting that the government's offer to provide him DES processing stands. If Sergeant Arroyo accepts this offer, he will have an opportunity to seek disability retirement benefits or severance pay. See 10 U.S.C. §§ 1204, 1206.

## CONCLUSION

In light of the foregoing, the government's motion for judgment on the administrative record is **GRANTED**, and Sergeant Arroyo's motion is **DENIED**. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

ELAINE D. KAPLAN
Judge